IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**KENDALL ALLEN FOREMAN**                                                                 **PLAINTIFF**

V.                            **CASE NO. 5:19-CV-5215**

**JOEL NEECE; SHANNON NEECE;**
**and PIGTOWN BAKERY, INC.**
**a/k/a NOTHING BUNDT CAKES, LLC**                                        **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Currently before the Court are a Motion for Summary Judgment (Doc. 36), Brief in Support (Doc. 37), Statement of Facts (Doc. 38), and supporting documents (Doc. 39) filed by Defendants Joel and Shannon Neece and Pigtown Bakery, Inc., a/k/a Nothing Bundt Cakes, LLC (collectively, "NBC"). More than a month has passed since the Motion was filed, and Plaintiff Kendall Allen Foreman, who is representing himself, has failed to file a response. For the reasons explained below, the Motion (Doc. 36) is **GRANTED**.

**I.  BACKGROUND**

Mr. Foreman filed a complaint for discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 24, 2019. He claimed he had been hired by NBC as a utility worker on February 1, 2019. His first day of work at the bakery owned and operated by NBC was February 4, 2019. According to Mr. Foreman, NBC fired him on February 25, 2019, in violation of the Americans with Disabilities Act ("ADA") after he disclosed to his supervisor that he was positive for Hepatitis C. The EEOC declined to take action against NBC and issued a Right to Sue Letter to Mr. Foreman on September 30, 2019 (Doc. 1, p. 7). Then, on November 21, 2019, Mr. Foreman filed a timely Complaint for employment discrimination in this Court.

The Complaint alleges that NBC discriminated against Mr. Foreman because of an actual or perceived disability.[1] The allegations of wrongdoing stated in the Complaint are supported by very few facts. Moreover, Mr. Foreman never filed a response to the Motion for Summary Judgment, which means that he did not submit any further facts—beyond those in his original Complaint—to support his claims. NBC, on the other hand, submitted a complete copy of Mr. Foreman's deposition for the Court's review, so to the extent Mr. Foreman's sworn testimony supports his claims and creates a genuine, material dispute of fact supporting the denial of summary judgment, the Court has taken that testimony into account.

Beginning with the Complaint, Mr. Foreman claims without further elaboration that he was "dismissed because of insubordination claimed by store manager Hannah Neecey [sic] on Feb. 25, 2019—but not before I said I had Hep C." *Id.* at p. 4.[2] According to the deposition of Shannon Neece ("Shannon"), owner of Nothing Bundt Cakes, LLC and Pigtown Bakery, Inc., Mr. Foreman was hired to assist the store's baker by washing pans, taking out trash, flipping cakes, assembling cake boxes, mopping floors, unloading deliveries, and cleaning the bathroom. (Doc. 39-4, p. 6). Soon after he started working,

---

[1] Mr. Foreman's Complaint was submitted on a form containing descriptions of possible causes of action followed by boxes to check. Mr. Foreman checked the box beside the description of an ADA violation. In addition, he checked boxes for "other federal law violation," "relevant state law violation," and "relevant city or county law violation." He never specified which "other violations" of federal, state, city, or county law he believed his former employer committed—apart from the ADA violation. For these reasons, the Court finds that the only cause of action that has been stated with any degree of specificity is one for employment discrimination/wrongful termination under the ADA.

[2] The Complaint also lists arthritis and "bulging discs" as disabilities, but Mr. Foreman testified in his deposition that at the time he worked at the bakery, he did not have "a diagnosis of a back issue" and the only disability he claimed was the "hepatitis C virus." (Doc. 39-8, p. 6).

Mr. Foreman developed a chemical burn or rash on his arm caused by a sanitizing agent used to wash the dishes. *Id.* at pp. 7–8. He requested gloves to cover his hands and arms, and NBC purchased and provided the gloves. *Id.* at p. 8. After he visited the doctor about the burn, the doctor recommended that he be assigned only "light duty" tasks for seven days, which essentially meant that he was restricted from doing the dishes. *Id.* at pp. 9–10. Shannon understood the doctor's note to mean that Mr. Foreman was cleared to perform the non-dishwashing tasks that were included in his job description. *Id.* at p. 10.

Shannon's adult daughter Hannah Neece ("Hannah"), who was the store's operations manager at the time, presented deposition testimony that corroborated Shannon's version of events. *See* Doc. 39-5. As operations manager, it was Hannah's job to schedule employees to work shifts and to fill in when workers were absent and the bakery was shorthanded. *Id.* at p. 3. She did not directly hire Mr. Foreman but trusted her then-assistant manager, Carissa Hunt, to perform that task. *Id.* at p. 5. According to Hannah, Mr. Foreman came to work two hours early one day to show her a burn or rash that had developed on his arm. *Id.* at p. 6. She advised him to go to a doctor for a diagnosis. *Id.* He later returned to work with a doctor's note that stated he was to be on "light duty" and not wear gloves or clean dishes for seven days. *Id.* at p. 7. Hannah instructed Mr. Foreman not to wash dishes for seven days. She assigned him other tasks, including sweeping the floor, sorting boxes for cakes, mopping, and folding boxes. *Id.*

Hannah testified that on Friday, February 22, she arrived at the store at around 10:30 or 11:00 a.m., which was a couple of hours after Mr. Foreman started his shift for the day. *Id.* at p. 8. At 11:30 a.m. Mr. Foreman approached Hannah and told her that he

was done with his work and there was nothing else to do. Hannah testified that she told Mr. Foreman, "No, you're not done. There are still cakes I need to be flipped when those come out." *Id.* She also told him to mop the bathroom, which led to an argument because Mr. Foreman refused to do the mopping. *Id.* at p. 9. Soon after that, Mr. Foreman walked back to the dishwashing station and took photographs of the operating instructions. *Id.* at p. 10. Hannah told him to stop taking photographs, and he responded, "Why don't you ask your mom?" and walked away. *Id.* Hannah interpreted his response as "extremely rude considering I am his boss at the bakery." *Id.* at p. 11. She pulled him to the side and said, "We don't tolerate that kind of talk," and he "crossed his arms" and "was tapping his foot." *Id.* She described the entire interaction with Mr. Foreman that day as "very disrespectful and insubordinate, it was insubordinate to me." *Id.* Mr. Foreman left the bakery at around lunch time but never returned for the remainder of his shift in the afternoon. *Id.*

After Mr. Foreman left for the day, Hannah spoke with Ms. Hunt, the assistant manager. Ms. Hunt stated that Mr. Foreman had also been rude to her and had argued with her about performing certain tasks at work before he walked off the job. *Id.* at p. 12. Hannah then called her mother, Shannon, to complain about Mr. Foreman's behavior and "t[ell] her what was going on." *Id.* Hannah contends that Shannon authorized her to terminate Mr. Foreman for insubordination and "disrespect." *Id.* As for Mr. Foreman's Hepatitis-C diagnosis, Hannah testified that her mother had told her at some point about it, but the only instruction she was given was to have Mr. Foreman wear gloves around the bakery. *Id.* at p. 13. Hannah and Shannon both testified that Mr. Foreman's Hepatitis-C diagnosis was not a factor they considered in firing him; instead he was fired for his

insubordinate tone and attitude in speaking with Hannah and Ms. Hunt and for his failure to report for his shift in the afternoon on Friday, February 22. *Id.*; Doc. 39-4, pp. 12–13.

Ms. Carissa Hunt, now the operating manager of the bakery, also testified. (Doc. 39-6). Ms. Hunt explained in her deposition that she hired Mr. Foreman as a utility worker after a brief interview. *Id.* at p. 4. Mr. Foreman worked at the bakery for a little less than a month. At the time he was hired, he did not disclose to Ms. Hunt that he had Hepatitis C and did not claim he had any medical restrictions that required accommodation. *Id.* However, at some point after he started working, he did disclose his Hepatitis-C diagnosis to Ms. Hunt and asked that his hours be reduced so that he could continue to qualify for Medicaid benefits. *Id.* at p. 7. Ms. Hunt conferred with Hannah and then cut Mr. Foreman's hours, as he requested. *Id.* After his hours were cut, Ms. Hunt and one of the bakers often had to step in to help clean and do dishes every day. *Id.*

Ms. Hunt maintains that after Mr. Foreman sustained the burn on his arm and went to the doctor, he was restricted from washing dishes but was able to perform other light-duty tasks around the bakery, including folding boxes and flipping cakes. *Id.* at p. 9. He argued with Ms. Hunt on Friday, February 22, when she instructed him not to do the dishes and instead to mop the floor. *Id.* at pp. 10–11. He told her that he was worried that mopping would place him in contact with chemicals that could worsen his burn. *Id.* at p. 11. Ms. Hunt testified that there was plenty of other work for him to do that day, including folding boxes, flipping cakes, and sweeping, and that she never gave him permission to go home early. *Id.* at p. 12. Ms. Hunt also testified that she overheard Mr. Foreman arguing with Hannah shortly before he walked off the job for the day, and Ms.

Hunt confirmed that Mr. Foreman's failure to return to work that afternoon left the bakery shorthanded. *Id.* at pp. 13–14.

On February 25, the day of Mr. Foreman's termination, Ms. Hunt claims that he arrived at the bakery in the morning for his shift. *Id.* at p. 15. She brought him to the back of the shop and explained that the company was letting him go due to his negative attitude and for walking off the job on Friday. He grabbed his things and said, "I'll see you in court" and left. *Id.*

The last deposition to consider is Mr. Foreman's. (Doc. 39-8).[3] He maintains that he first told Hannah about his Hepatitis-C diagnosis around the time he developed the burn on his arm from washing dishes. (Doc. 39-8, p. 18). He claims he disclosed his diagnosis to Hannah out of "concern for her and her employees" and to justify taking time off to see a doctor. *Id.* at p. 19. He testified that he visited the doctor on February 20 and returned to work with the doctor's note on February 21. *Id.* at p. 30. On Friday, February 22, Mr. Foreman claims he spoke with Hannah who told him "to scrub and mop up the baseboards . . . ." *Id.* at p. 33. Early in the deposition, Mr. Foreman testified that Hannah had given him permission to leave early on February 22 after he told her he had completed all tasks she had assigned, including mopping. *Id.* However, later on in the deposition, NBC's attorney asked Mr. Foreman whether Ms. Hunt and Hannah were both lying when they testified they did *not* let him off early on Friday because there was still more work he could do. Mr. Foreman responded, "They're probably not lying about that, but they didn't have work for me to do outside my doctor's orders." *Id.* at p. 35. At the

---

[3] Defendants also submitted the deposition of Sam Goodyear, who was formerly a dishwasher at NBC and is now the head baker. (Doc. 39-7). Mr. Goodyear's deposition corroborates Shannon's, Hannah's, and Ms. Hunt's, and adds no new, material facts.

close of Mr. Foreman's deposition, NBC's lawyer asked him why he thought he had been terminated, and he responded, "I don't know why I was terminated." *Id.* at p. 36. When he was asked to explain his claim for damages, he responded, "I plead the Fifth." *Id.*

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1998).

In order for there to be a genuine issue of material fact, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In response, "[t]he nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

In the case of a plaintiff's failure to respond to a motion for summary judgment, the reviewing court must still address the merits of that motion and not rule automatically in the defendant's favor. *Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005), *cert. denied*, 549 U.S. 865 (2006); *United States v. One Parcel of Real Prop.*, 27 F.3d 327,

329 n. 1 (8th Cir. 1994); *Canada*, 135 F.3d at 1213 ("When a motion would be dispositive of the merits of the cause if granted, courts should normally not treat a failure to respond to the motion as conclusive.").

### III. DISCUSSION

To determine whether Mr. Foreman's disability discrimination claim survives summary judgment, the Court must assess whether the record evidence, taken in the light most favorable to Mr. Foreman, establishes a *prima facie* case of disability discrimination. He can establish a *prima facie* case either by providing direct evidence of discrimination or by creating an inference of discrimination under the familiar three-step analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). *Bone v. G4S Youth Servs., LLC*, 686 F.3d 948, 953 (8th Cir. 2012). Here, Mr. Foreman has not submitted any direct evidence of discrimination. As for the *McDonnell-Douglas* burden-shifting framework, Mr. Foreman bears the initial burden of establishing that he: (1) was disabled or was regarded as having a disability within the meaning of the ADA, (2) was a "qualified individual" who could perform the "essential functions" of the job, as defined by the ADA, and (3) suffered an adverse employment action because of his disability. *E.E.O.C. v. Product Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014) (citing *Young v. Warner-Jenkinson Co.*, 152 F.3d 1018, 1021 (8th Cir. 1998)). Within the meaning of the ADA, the term "disability" means having "a physical or mental impairment that substantially limits one or more major life activities of such individual" or "being regarded as having" such an impairment. 42 U.S.C. § 12102(1). "Major life activities" include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

In reviewing the record evidence, the Court concludes that Mr. Foreman has failed to meet his *prima facie* burden. He has not established any facts to show that he was either disabled or regarded as disabled as a result of the burn he sustained on his arm after washing dishes or as a result of his diagnosis of Hepatitis C. As for the burn on his arm, no evidence in the record indicates that it substantially limited one or more major life activities—except, perhaps, the manual task of dishwashing. The Court is highly skeptical that the Eighth Circuit would consider a plaintiff's inability to wash dishes for a seven-day period as being tantamount to having a qualified disability under the ADA. Furthermore, there is no evidence in the record that could lead a jury to conclude that Mr. Foreman's former supervisors regarded him as disabled due to the burn on his arm. With respect to his Hepatitis-C diagnosis, there is also no evidence that would indicate this condition substantially impacted any major life activity—or that any decisionmaker at NBC considered that this diagnosis substantially impacted any major life activity.

Second, even if Mr. Foreman had established facts showing he was disabled, he has offered no facts to indicate a causal connection between such disability and an adverse employment action. The undisputed facts in the summary judgment record show that he was terminated for insubordination and/or for walking off the job on February 22, 2019. Either reason would be a legitimate, nondiscriminatory basis for termination.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 36) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. Judgment will enter concurrently with this Opinion and Order.

**IT IS SO ORDERED** on this 7th day of October, 2020.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE